**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| QUANTIX LIQUID TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 14573 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MICHAEL ORTEGO, CHRISTOPHER TRICHE, B & J ORTEGO ENTERPRISES, INC., and SINDLE TRUCKING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Quantix Liquid Transportation, Inc. ("Quantix") lost one of its transportation providers, B & J Ortego Enterprises ("B & J Ortego"), to a competitor, Sindle Trucking ("Sindle"). Suspecting impropriety in the switch, Quantix brings claims for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with business relationship against B & J Ortego and its owner, Michael Ortego (collectively, the "Ortego Defendants"). It brings claims for tortious interference with contract and for aiding and abetting the Ortego Defendants' breaches against Sindle and Christopher Triche, a former Quantix employee who now works for Sindle. Quantix also brings a civil conspiracy claim and seeks injunctive relief against all Defendants. Sindle seeks dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and all Defendants have moved to dismiss the claims against them for failure to state a claim pursuant to Rule 12(b)(6). The Court dismisses all claims against Sindle for lack of personal jurisdiction. And the Court dismisses the breach of fiduciary duty and aiding and abetting claims, but allows Quantix to

proceed on its breach of contract, misappropriation of trade secrets, tortious interference, and conspiracy claims against the remaining Defendants.

## BACKGROUND[1]

Quantix, an Illinois corporation, is a motor carrier with operating authority from the Department of Transportation ("DOT"). Ortego owns B & J Ortego. Ortego lives in Louisiana, where B & J Ortego is also incorporated. Triche, a Louisiana resident, works for Sindle, a limited liability company based in Arkansas. Sindle has no customers in Illinois, and less than five percent of its trucks pass through Illinois.

Quantix contracted with B & J Ortego for B & J Ortego to service Quantix customers under Quantix's DOT authority. Quantix and B & J Ortego entered into an independent contractor agreement (the "IC Agreement") on September 6, 2022.[2] The IC Agreement provided that B & J Ortego would provide Quantix with the use of its equipment and "all labor, including driver(s), necessary to operate the Equipment and to perform all of the services contemplated by" the IC Agreement. Doc. 4 § 1. While the IC Agreement allowed B & J Ortego to provide services "to other motor carriers during the term of this Agreement in accordance with the

---

[1] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the complaint and the additional documents submitted by Sindle for purposes of resolving Sindle's Rule 12(b)(2) challenge. The Court resolves all factual conflicts and draws all reasonable inferences in Quantix's favor. *Id.* at 782–83. In addressing Defendants' Rule 12(b)(6) challenges, the Court takes the facts in the background section from the complaint and the exhibit attached thereto and presumes them to be true. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

[2] Quantix filed the IC Agreement under seal, providing a redacted version that reveals only the title of the agreement and the parties' signatures. Because the IC Agreement's contents are necessary to the Court's resolution of the motions, and the parties have cited to sections of the IC Agreement themselves, the Court has included in this Opinion language from the IC Agreement in order to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain"). Quantix should file a revised redacted version of the IC Agreement, which only redacts genuinely confidential information, on the docket.

requirements of federal law," *id.* § 1, it needed to obtain written authorization from Quantix before doing so, *id.* §§ 17.2, 18. The IC Agreement specifically provided, in bold and capital letters, that B & J Ortego "is an independent contractor, not an employee." *Id.* § 15.5; *see also id.* § 19.1 ("It is expressly understood and agreed that [B & J Ortego] is an independent contractor for the Equipment and driver services provided under this Agreement."); *id.* at 15 ("Contractor is NOT an employee of Carrier, and all aspects of the relationship between Contractor and Carrier are based on Contractor's status as an independent contractor."). It further provided that B & J Ortego "assume[d] full control and responsibility for [its] use or employment of [its] workers to perform any aspect of this Agreement," including "selection, training, and hiring; setting wages, salaries, and fringe benefits; . . . discipline, including discharge; . . . and all other matters relating to or arising out of [its] workers." *Id.* § 19.3.

Section 25.1 provided for protection of confidential matters and stated as follows:

> Contractor acknowledges that any list of Carrier's Customers, including non-public Customer-related information, is a valuable, special, and unique asset of the business of Carrier. Contractor agrees that during and after the term of this Agreement Contractor, including Contractor's workers: (i) will not disclose the list of Carrier's Customers or any part thereof to any third party for any reason without Carrier's prior written consent; (ii) will preserve as "Confidential Matters" all trade secrets, know how and information relating to Carrier's business, forms, processes, developments, sales and promotional systems, prices and operations, which information may be obtained from tariffs, contracts, freight bills, letters, reports, disclosures, reproductions, books, records, or other contractors, and other sources of any kind resulting from this Agreement; and (iii) will regard the Confidential Matters as the sole property of Carrier, and will not publish, disclose or disseminate the same to others without the written consent of Carrier.

*Id.* § 25.1. In connection with the IC agreement, B & J Ortego gained access to Quantix's computer systems, load boards, and customer information.

The IC Agreement was terminable at will, with either party able to terminate "at any time for any reason by giving 30 days' written notice to the other party" and "immediately for any of the grounds set forth in Section 2.2." *Id.* § 2.1. Section 2.2 provided three grounds for immediate termination: if a party "(i) commits—or attempts, conspires, or threatens to commit—a felony or intentional tort; (ii) violates any applicable federal, state, local, Native American tribal, or foreign law, regulation, or ordinance . . . ; or (iii) materially breaches this Agreement." *Id.* § 2.2. Finally, the IC Agreement provided that Illinois law governs and that the parties consent to jurisdiction in the state or federal courts serving Cook County, Illinois. *Id.* § 28.1.

Triche previously worked as Quantix's vice president of operations. As part of his Quantix employment, Triche agreed not to solicit or interfere with Quantix's customers or business partners and to protect Quantix's confidential information. Triche left Quantix on March 23, 2025 and immediately began his employment with Sindle. After leaving Quantix, Triche began soliciting Quantix's employees and customers. He pressured Ortego to sell his trucks to Sindle, offering Ortego substantial amounts of money to leave Quantix and join Sindle.

On October 27, 2025, Ortego informed Quantix that he was terminating the IC Agreement, effective immediately. Ortego also told Quantix that same day that he had sold his trucks to Sindle as of October 24, even though B & J Ortego had used these trucks to perform work for Quantix and service Quantix customers under the IC Agreement. Ortego did not provide Quantix with a reason for terminating the IC Agreement.

Quantix has confidential customer-related information, such as specific lanes and rates for Quantix customers. Before B & J Ortego left Quantix, Sindle had never serviced the Quantix customer lanes that B & J Ortego serviced for Quantix. Since B & J Ortego terminated the IC

Agreement, Quantix has lost customers, including at least one customer due to Sindle taking over specific lanes that Quantix had previously exclusively serviced.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Sindle's Rule 12(b)(2) Motion

#### A. Personal Jurisdiction over Sindle

In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg.*, 743 F.3d at 492. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and

connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity").

Personal jurisdiction comes in two forms: general and specific.[3] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Quantix does not argue that the Court has general jurisdiction over Sindle, so the Court only considers specific jurisdiction. Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself."). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014). A defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Id.* at 802. Instead, to establish specific jurisdiction over Sindle, Quantix must show that "(1) [Sindle] purposefully

[3] The Supreme Court has also clarified that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because Quantix does not argue that Sindle consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to [Sindle's] forum-related activities; and (3) any exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Quantix alleges that Sindle enticed B & J Ortego to shift customers away from Quantix, an Illinois-based company, to Sindle, and interfered with the IC Agreement, an Illinois-based contract. Quantix further alleges that Sindle caused damages to Quantix's Illinois operations and solicited drivers and confidential information, which had a "home base" in Illinois.[4] Doc. 56 at 5. Quantix appears to acknowledge that Sindle itself does not have any connections to Illinois and did not purposefully direct its conduct at Illinois. *See Quantix Liquid Transp., Inc. v. Gil*, No. 25-cv-4637, 2026 WL 879786, at *4 (N.D. Ill. Mar. 30, 2026) (dismissing Sindle for lack of personal jurisdiction where "Quantix has not alleged a single fact from which this Court can infer that Sindle took any purposeful action of any kind in or directed at Illinois," and noting that "[a]lthough Sindle's conduct may have 'targeted' Quantix, that conduct cannot be said to 'target' Illinois").

Quantix nonetheless contends that the Court has jurisdiction over Sindle because Sindle entered into a conspiracy with the other Defendants and the other Defendants carried out acts in furtherance of the conspiracy in Illinois. As support, Quantix cites *Markarian v. Garoogian*, which recognized such a conspiracy theory of jurisdiction. 767 F. Supp. 173, 178 (N.D. Ill. 1991). The Seventh Circuit has indicated, however, that the conspiracy theory of personal jurisdiction "may not be valid in Illinois." *Smith v. Jefferson Cnty. Bd. of Educ.*, 378 F. App'x

[4] Quantix appears to take the allegation about soliciting drivers and confidential information with a home base in Illinois from Quantix's related suit against Sindle and another independent contractor, *Quantix Liquid Transp., Inc. v. Gil*, No. 25-cv-4637 (N.D. Ill.). *See* Doc. 56 at 5 (citing "SAC ¶ 1, 76").

582, 585 (7th Cir. 2010); *see also Knaus v. Guidry*, 389 Ill. App. 3d 804, 819–26 (2009) (noting the "articulated hesitancy of [the Illinois] supreme court . . . to adopt the conspiracy theory of jurisdiction in Illinois" and requiring, at the least, that the defendant have engaged in "an act purposefully directed at the forum state, such as conduct designed to create an injury in that state"); *Ploense v. Electrolux Home Prods., Inc.*, 377 Ill. App. 3d 1091, 1104–05 (2007) (stating that the conspiracy theory of jurisdiction has been "effectively scuttle[ed]" in Illinois because the theory relies on the understanding that co-conspirators act as each other's agents and the Illinois Supreme Court has held that an agency relationship does not exist among coconspirators,). But even treating it as a viable theory, the Court does not find that the conspiracy theory provides the Court with jurisdiction over Sindle because Quantix must still allege that Sindle purposely directed its actions in furtherance of the conspiracy at Illinois. *See Davis v. Entities Listed on Exhibit 1*, No. 23-cv-10799, 2026 WL 893345, at *5 (N.D. Ill. Mar. 31, 2026) ("[E]ven if a conspiracy theory of personal jurisdiction applies, it can only apply in a situation where a defendant's 'actions in furtherance of the conspiracy' were 'purposely directed towards Illinois.' Plaintiffs do not allege any acts in furtherance of the conspiracy by B-E Group One Defendants that are specific to Illinois." (citing *Knaus*, 389 Ill. App. 3d at 827)). The only tie to Illinois is Quantix's location. But "after Walden there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative." *Advanced Tactical*, 751 F.3d at 802 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Therefore, the Court does not have jurisdiction over Sindle and dismisses Quantix's claims against it for lack of personal jurisdiction. *See Gil*, 2026 WL 879786, at *4–5 (finding the court lacked jurisdiction over Sindle based on the same alleged jurisdictional facts).

### B. Quantix's Request for Jurisdictional Discovery

Alternatively, Quantix asks that the Court allow it to conduct jurisdictional discovery into Sindle's contacts with Illinois. For a court to permit jurisdictional discovery, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (citation omitted); *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020) (the plaintiff "must make a 'colorable' showing of personal jurisdiction before discovery is allowed"). This requires a plaintiff to "show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (citation omitted). Quantix has not met its burden by making a prima facie or colorable showing of jurisdiction or demonstrating an ambiguous factual record. The fact that Sindle states it provides services across the United States on its website and acknowledges that a very small percentage of its trucks pass through Illinois on its routes does not support Quantix's request, particularly given that these representations do not appear tied to any alleged conduct in this case. *See Gil*, 2026 WL 879786, at *5 n.6 (rejecting Quantix's argument that Sindle having drivers pass through Illinois could provide a basis for jurisdiction because the conduct "is unrelated to the alleged torts and Quantix's purported injuries"). Sindle also avers that it has no customers or employees in Illinois, undercutting Quantix's speculation that some of Quantix's Illinois-based customers or drivers have switched their business to Sindle. The Court therefore denies Quantix's request for jurisdictional discovery. *See Medline Indus.*, 2020 WL 5763637, at *4 ("[W]hen a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted.").

## II. Rule 12(b)(6) Motions

### A. Breach of Contract

To state a claim for a breach of contract under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Sol., Inc.*, 2022 IL 127903, ¶ 28. Quantix alleges that the Ortego Defendants breached (1) Section 25.1 of the IC Agreement related to confidential matters, (2) Sections 2.1 and 2.2 of the IC Agreement related to termination of the agreement, and (3) the IC Agreement generally by making misrepresentations to Quantix employees. The Ortego Defendants argue that Quantix has not stated a claim under any of these theories.

#### 1. Confidentiality Breach

Courts enforce confidentiality agreements "only when the information sought to be protected is actually confidential and reasonable efforts were made to keep it confidential." *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007). The Ortego Defendants argue that Quantix's allegations related to the breach of the confidentiality provision of the IC Agreement are conclusory because Quantix did not specify the confidential information that the Ortego Defendants allegedly disclosed and the steps Quantix took to keep the information confidential. But the Ortego Defendants ask for too much at the pleading stage. The IC Agreement spells out what Quantix considers "Confidential Matters," Doc. 4 § 25.1, and the complaint alleges that the Ortego Defendants disclosed customer-related information including specific lanes and rates for Quantix customers, to Sindle, Doc. 1 ¶¶ 21, 38. While the complaint does not include details of the steps Quantix took to keep information confidential aside from requiring the Ortego Defendants to sign the IC Agreement, this suffices at the pleading stage.

*See Liion, LLC v. Vertiv Grp. Corp.*, No. 18 C 6133, 2019 WL 1281977, at *2 (N.D. Ill. Mar. 20, 2019) ("As to whether Plaintiff took sufficient steps to protect its trade secrets, that is also a factual inquiry that is unfitting at the motion-to-dismiss stage."); *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 842 (C.D. Ill. 2014) ("Nondisclosure agreements, such as the confidentiality agreement that Bauknecht signed, are important evidence of reasonable steps [to secure confidential information]."). Quantix can therefore proceed on its claim for breach of the confidentiality provision.

**2. Termination Breach**

Section 2.1 of the IC Agreement provides that a party can terminate the agreement for any reason by providing thirty days' notice, while Section 2.2 provides that a party can immediately terminate the agreement if the other side has materially breached the agreement. Quantix alleges that the Ortego Defendants breached these termination provisions because they terminated the agreement without notice but did not provide a reason for the termination as required for immediate termination under Section 2.2. The Ortego Defendants argue, however, that they terminated the IC Agreement due to material breaches by Quantix and that, as a result, Quantix's claim for breach of the termination provisions fails. But while a material breach may serve as a defense to Quantix's claim, it cannot defeat Quantix's claim at the pleading stage because the Court must take Quantix's allegations as true and the complaint nowhere mentions any breach by Quantix. *See Kubiak*, 810 F.3d at 480–81. The Court therefore will allow this aspect of the breach of contract claim to proceed to discovery.

**3. Misrepresentations**

Finally, Quantix claims that the Ortego Defendants breached the IC Agreement by telling drivers of its trucks that they were employed by B & J Ortego and would lose their jobs if they

did not follow the Ortego Defendants to Sindle. Quantix maintains that the drivers "were in fact employees of Quantix." Doc. 1 ¶ 19. This aspect of Quantix's breach of contract claim fails, however. Quantix has not identified any specific aspect of the IC Agreement that the Ortego Defendants breached by making this representation. *See Sumi Cho v. Rosato Perea*, No. 18 C 8117, 2019 WL 4645419, at *11 (N.D. Ill. Sept. 24, 2019) (noting that the failure to indicate the obligation that the defendant breached makes a breach of contract claim "merely possible, not plausible" (citation omitted)). And to the extent the Ortego Defendants made these representations to their own drivers, the IC Agreement makes clear no misrepresentation occurred as it provides that B & J Ortego, not Quantix, employed the drivers working under it. Therefore, Quantix cannot pursue a breach of contract claim based on the Ortego Defendants' alleged misrepresentations concerning the employment of its drivers.

### B. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under Illinois law, Quantix must allege that: "(1) a fiduciary duty existed, (2) the duty was breached, and (3) the breach of the duty proximately caused damages." *Gavin/Solmonese LLC. v. Kunkel*, No. 16-CV-1086, 2016 WL 3612123, at *4 (N.D. Ill. July 6, 2016). The Ortego Defendants argue that Quantix has not alleged that the Ortego Defendants owed Quantix a fiduciary duty.

Fiduciary duties may arise from "particular relationships, such as attorney-client and principal-agent," or "as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672 (1997). Quantix alleges that the Ortego Defendants acted as Quantix's agent and so owed Quantix a duty of loyalty. The Ortego Defendants argue, however, that Quantix's allegation of an agency relationship is conclusory and

undermined by the IC Agreement, which provided that the Ortego Defendants were independent contractors.

The Ortego Defendants' "status as an independent contractor does not preclude the existence of a principal-agent relationship as an entity may be both an independent contractor and an agent owing a fiduciary duty." *Gil*, 2026 WL 879786, at *8 (citing Restatement (Second) of Agency § 14N (1958)). But, as the Ortego Defendants point out, Quantix must do more than just allege that the Ortego Defendants acted as its agent; it "must plead facts that, if proven, could establish the existence of an agency relationship." *Tyler v. Bank of N.Y. Mellon*, No. 29 CV 7863, 2020 WL 2735367, at *6 (N.D. Ill. May 26, 2020). In determining whether the Ortego Defendants were agents of Quantix or independent contractors, "the cardinal consideration is whether that person retains the right to control the manner of doing the work." *Petrovich v. Share Health Plan of Ill., Inc.*, 188 Ill. 2d 17, 46 (1999). Quantix alleges that the Ortego Defendants had access to Quantix's confidential information and serviced Quantix's customers. But these allegations do not address whether Quantix controlled the manner of the Ortego Defendants' work so as to suggest a principal-agent relationship, and the IC Agreement's emphasis on the Ortego Defendants retaining control over the services it provides points to the opposite conclusion. *See, e.g.*, Doc. 4 at 15 ("[A]ll aspects of the relationship between Contractor and Carrier are based on Contractor's status as an independent contractor."). Further, the fact that Quantix trusted the Ortego Defendants with its confidential information does not create a fiduciary duty. *See Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-cv-7619, 2016 WL 7409916, at *5 ("[S]imply trusting another party to maintain 'confidential' information is also insufficient to create a fiduciary duty."). Therefore, because the Ortego Defendants did not owe Quantix a fiduciary duty, the Court dismisses the breach of fiduciary duty claim. *See*

*Gil*, 2026 WL 879786, at *8–9 (dismissing similar claim against another independent contractor where Quantix did not allege facts that suggested how it "controlled the manner of the Gil Defendants' work or how the Gil Defendants could legally bind Quantix").

**C. Trade Secret Misappropriation**

The Illinois Trade Secrets Act ("ITSA") prohibits the misappropriation of trade secrets under Illinois law. 865 Ill. Comp. Stat. 1065/1 *et seq.* A plaintiff bringing an ITSA claim must allege "that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *REXA, Inc. v. Chester*, 42 F.4th 652, 662 (7th Cir. 2022) (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003)). ITSA defines a trade secret as information that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 Ill. Comp. Stat. 1065/2(d).

The Ortego Defendants argue that Quantix has not sufficiently alleged the trade secrets that the Ortego Defendants misappropriated. But "[t]he existence of a trade secret ordinarily is a question of fact," *Learning Curve Toys*, 342 F.3d at 723, with trade secret allegations found "adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms," *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (collecting cases); *see Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (allegation that the defendant "was exposed to confidential information such as 'customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales

reports'" sufficed at the pleading stage). The "general terms" pleading standard does not give plaintiffs license to allege the existence of a trade secret in a conclusory manner, however: "It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992).

Quantix has alleged in the complaint that its trade secrets include "customer contact information, customer rate information, driver agreements and documents, and driver data." Doc. 1 ¶ 57. The Ortego Defendants argue that Quantix must include additional details. But the Ortego Defendants again ask for too much at the pleading stage. Quantix has identified the categories of business-related information that it considers a trade secret, that it has taken steps to keep this information secret through the IC Agreement, and that these trade secrets have generated value to it. *See Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 831–32 (N.D. Ill. 2019) (allegations of general categories of trade secrets that the defendants had access to, such as pricing information, strategies, and technology information, were adequate to survive a motion to dismiss). This suffices to allow Quantix to proceed to discovery on its ITSA claim.[5] *See Gil*, 2026 WL 879786, at *9 (allowing ITSA claim based on misappropriation of employee and equipment list, Quantix's contracts and other business documents, and information about loads, trucking lanes, and equipment to proceed).

### D. Tortious Interference with Business Relationships

To state a claim for tortious interference with business relationships, Quantix must allege "(1) that it had a valid business relationship or a reasonable expectation of entering into a valid

[5] The Court agrees with the Ortego Defendants, however, that to the extent that the IC Agreement or other Quantix documents are publicly available, they no longer constitute trade secrets and cannot support an ITSA claim. *See BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706 (7th Cir. 2006) ("A trade secret that becomes public knowledge is no longer a trade secret.").

business relationship; (2) that [the Ortego Defendants] had knowledge of that relationship or expectancy; (3) that [the Ortego Defendants] intentionally interfered, inducing or causing a breach or termination of the relationship or expectancy; and (4) that [Quantix] suffered damages as a result." *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, 738 F. Supp. 3d 1018, 1022 (N.D. Ill. 2024). The Ortego Defendants contend that Quantix has not sufficiently alleged the third element of inducement.

To meet the inducement element, Quantix must allege "some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018) (quoting *In re Estate of Albergo*, 275 Ill. App. 3d 439, 446 (1995)). The "knowledge that one's conduct is substantially certain to result in one party breaking its contract with another" does not suffice. *Id.* (quoting *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir. 1987)). Quantix first alleges that the Ortego Defendants induced Quantix's employee drivers to leave Quantix for Sindle or B & J Ortego by making misrepresentations to them about their employment status. The Ortego Defendants quibble with whether they could make misrepresentations or interfere with their own employees, but at least for purposes of this claim, Quantix alleges that it also directly employs drivers, whom the Ortego Defendants solicited. The alleged intentional misrepresentations about these drivers' employment status sufficiently suggest inducement so as to allow Quantix to continue with a tortious interference claim with respect to its relationships with its own drivers.

Quantix also claims that the Ortego Defendants intentionally interfered with Quantix's relationships with its customers by suddenly terminating the IC Agreement and leaving Quantix without resources to continue servicing its customers. Quantix has not sufficiently alleged inducement as to the customers, however, as the Ortego Defendants directed their termination of

the IC Agreement at Quantix, not third parties, and only suggests general, expected harm to Quantix's business. *See KC Rental, LLC v. WMK Automotive, Inc.*, No. 24 C 741, 2024 WL 4226275, at *4–5 (N.D. Ill. Sept. 18, 2024) ("The mere fact that the McGrath Defendants' alleged actions harmed KC Rental's business does not mean that those actions intentionally and specifically interfered with KC Rental's business expectancy as to its customers, financers, or any other third party. Were it otherwise, then nearly any intentional harm to KC Rental's business would give rise to a tortious interference claim if the ultimate effect was to impede KC Rental's ability to lease vehicles to its customers."); *Chartwell Studio, Inc. v. Team Impressions, Inc.*, No. 19-cv-06944, 2023 WL 1992180, at *13 (N.D. Ill. Feb. 14, 2023) ("Defendants' efforts must be directed at a third party[.]"). The Court therefore dismisses Quantix's tortious interference claim as it relates to its customers.

### E. Tortious Interference with Contract

To state a tortious interference with contract claim, Quantix must allege "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989) (citation omitted). Quantix contends that Triche knew of the IC Agreement and interfered with it by enticing the Ortego Defendants to shift customers away from Quantix to Sindle. Triche argues that Quantix has not sufficiently alleged his knowledge of the agreement's terms, inducement, or an underlying breach.[6]

[6] In his reply, Triche points out that because the IC Agreement is terminable at will, any claim for interference with contract fails. *See Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) ("Under Illinois law, '[a] defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations.'" (alteration in

Taking the last argument first, the Court has already found that Quantix has sufficiently alleged a breach of contract. As to Triche's knowledge of the IC Agreement's terms, Quantix has alleged that Triche previously served as Quantix's vice president of operations and had access to Quantix's confidential information. This sufficiently suggests that he knew of the IC Agreement and its terms. As for inducement, Triche claims that the complaint includes only the legal conclusion that Triche induced the Ortego Defendants to breach the IC Agreement. But Quantix alleges that Triche offered Ortego "substantial amounts of money to leave Quantix and join Sindle," Doc. 1 ¶ 27, which at this stage suggests "active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Webb*, 906 F.3d at 579. The Court therefore allows Quantix to proceed on its tortious interference claim against Triche.

**F. Aiding and Abetting**

To state an aiding and abetting claim, Quantix must allege that (1) the Ortego Defendants performed a wrongful act that caused injury, (2) Triche knew of his role when he provided assistance, and (3) Triche knowingly and substantially assisted the violation. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 772 (2007). The Court has already found that Quantix has sufficiently alleged that the Ortego Defendants breached the IC Agreement and misappropriated trade secrets, and so the Court turns to the remaining elements. Triche argues that Quantix has not sufficiently alleged how he knowingly and substantially assisted the violations, instead only including conclusory allegations related to recruitment and encouragement. Quantix responds by focusing on Sindle's hiring of drivers and solicitation of Quantix's customers. But these actions do not suggest how Triche assisted the Ortego

original) (quoting *Prudential Ins. Co. of Am. v. Sipula*, 776 F.2d 157, 162 (7th Cir. 1985)). While this may affect the technical title of the claim against Triche, it does not change the elements that Quantix must allege.

Defendants in the Ortego Defendants' breach of the IC Agreement or misappropriation of trade secrets. *See Symbria, Inc. v. Callen*, No. 20-cv-4084, 2022 WL 60530, at *18 (N.D. Ill. Jan. 6, 2022) ("[T]he TAC is devoid of allegations that any of the Defendants directed Dilmas or Irvine to send the information or provided resources to help them pull off the theft. Without this factual proffer, the aiding and abetting count remains implausible."). Without additional allegations going specifically to this element, the Court cannot allow Quantix to proceed against Triche on an aiding and abetting claim.

### G. Civil Conspiracy

A civil conspiracy claim under Illinois law requires allegations of "(1) the existence of an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) . . . an overt act . . . performed by one of the parties pursuant to and in furtherance of a common scheme, and (4) an injury caused by the unlawful overt act." *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 20. The Ortego Defendants and Triche argue that Quantix has not sufficiently alleged the existence of an agreement. Quantix responds that it has alleged a coordinated effort to breach the IC Agreement and misappropriate trade secrets. Quantix's allegations suffice at this stage, as it has identified the parties to the conspiracy, the purpose behind it, and the approximate dates, beginning when Triche left his employment with Quantix on March 23, 2025 and continuing at least through the filing of the complaint in December 2025. *See Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) ("[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with.").

The Ortego Defendants and Triche also argue that the Court should dismiss the conspiracy claim because Quantix has not sufficiently alleged any underlying tortious conduct.

But because the Court has found that several of Quantix's claims can proceed, this argument fails. The Court therefore allows the civil conspiracy claim to proceed.

**H. ITSA Preemption**

The Ortego Defendants and Triche argue that, to the extent that Quantix's claims for tortious interference and civil conspiracy rely on alleged trade secret misappropriation, ITSA preempts these claims. Section 8 of ITSA states that, "[e]xcept as provided in subsection (b), [ITSA] is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8(a). "[T]he ITSA preempts claims for misappropriation of confidential information (whether a trade secret or not); but it does not preempt claims that do not hinge on whether the information at issue is confidential." *Westrock Co. & Victory Packaging, LP v. Dillon*, No. 21 C 5388, 2021 WL 6064038, at *18 (N.D. Ill. Dec. 22, 2021) (citing *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005)). In deciding whether ITSA preempts a claim, the court asks whether it "would stand regardless of whether trade secrets were at issue." *Gen. Elec. Co.*, 394 F. Supp. 3d at 835.

To the extent that Quantix's tortious interference and conspiracy claims involve misappropriation and disclosure of Quantix's confidential information, ITSA preempts those parts of the claims. *See Traffic Tech, Inc. v. Kreiter*, No. 14-cv-7528, 2015 WL 9259544, at *15 (N.D. Ill. Dec. 18, 2015). But because Quantix also "seek[s] recovery for wrongs beyond the mere misappropriation" of trade secret or confidential information, *Lumenate Techs., LP v. Integrated Data Storage*, No. 13 C 3767, 2013 WL 5974731, at *7 (N.D. Ill. Nov. 11, 2013) (citation omitted), the Court will allow the non-preempted aspects of these claims to proceed, *see Hecny*, 430 F.3d at 405.

### I. Injunctive Relief

Finally, the Ortego Defendants and Triche ask the Court to dismiss Quantix's separate claim for injunctive relief. They argue that injunctive relief is a remedy, not a separate claim. *See Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019) ("With respect to injunctive relief, that is a remedy, not a cause of action, and thus should not be pleaded as a separate count."). Although Quantix improperly set forth its request for injunctive relief as a separate count, the Court will allow Quantix to pursue injunctive relief if it prevails on any of its remaining substantive claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss [44, 47]. The Court dismisses all claims against Sindle without prejudice for lack of personal jurisdiction. The Court also dismisses Quantix's breach of contract claim based on misrepresentations about drivers' employment status, breach of fiduciary duty claim, tortious interference with business relationship claim based on interference with Quantix's customers, and aiding and abetting claim without prejudice.

Dated: September 29, 2026

SARA L. ELLIS
United States District Judge